UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                          )
                                                )        Case No. 12-10321 MER
PEAK 'N PRAIRIE LANDSCAPE &                     )
RECLAMATION INC.                                )
EIN: 84-1508454                                 )        Chapter 11
                                                )
        Debtor.                                 )

## PLAN OF REORGANIZATION DATED OCTOBER <u>31</u>, 2012

The Peak 'N Prairie Landscape & Reclamation, Inc., Debtor and Debtor-in-Possession hereby proposes, pursuant to Chapter 11, Title 11 of the United States Code, the following Plan of Reorganization.

## ARTICLE I
## INTRODUCTION

Peak 'N Prairie Landscape & Reclamation, Inc. ("Debtor") is a Colorado corporation that is engaged in business as a commercial and residential landscaping company. The Debtor's principal place of business is at 11965 Tower Road, Commerce City, Colorado.

This Plan provides for the reorganization of the Debtor under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtor shall restructure its debts and obligations and continue to operate in the ordinary course of business. A more complete history of the Debtor, its operations, an explanation of this Plan, and a description of the Debtor's financial condition and future business activity is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

## ARTICLE II
## DEFINITIONS

2.01 – <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy

1

Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2)(A) of the Bankruptcy Code.

2.02 - Allowed Claim shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

2.03 - Allowed Secured Claim shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

2.04 – Avoidance Actions means the Debtor's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable subordination under § 510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

2.05 - Claim shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment

2

or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

2.06 - <u>Class</u> shall mean any Class into which Allowed Claims are classified pursuant to Article III.

2.07- <u>Class 1, 2, 3, 4, 5 and 6 Claims and Interests</u> shall mean the Allowed Claims and Interests so classified in Article III.

2.08 - <u>Code</u> shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

2.9 – <u>Confirmation Date</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

2.10 - <u>Court</u> shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

2.11 -   <u>Debtor</u> shall mean the Debtor who is proposing this Chapter 11 Plan.

2.12 - <u>Disclosure Statement</u> shall mean the Disclosure Statement which is approved by the Court according to 11 U.S.C. § 1125 to be utilized to solicit votes for this Plan.

2.13 - <u>Disputed Claim</u> means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

2.14 - <u>Effective Date of the Plan</u> shall mean the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

2.15 - <u>Final Order</u> shall mean an order or judgment of the Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to appeal from or to seek review, rehearing or certiorari shall have expired, and (b) no appeal or petition for review, rehearing or certiorari is pending or if appealed shall have been affirmed, or the appeal dismissed by the highest court to which such order was

appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and no further hearing, appeal or petition for review, rehearing or certiorari can be taken or granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived.

2.16 - <u>Interest</u> shall mean any shareholder interest or any other instrument evidencing any ownership interest in the Debtor and any option, warrant or right of any nature, contractual or otherwise, to acquire a stock or other ownership interest in the Debtor.

2.17 - <u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

2.18 - <u>Petition Date</u> shall mean the date on which the voluntary Petition was filed by the Debtor on January 9, 2012.

2.19 - <u>Plan</u> shall mean this Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

2.20 - <u>Priority Claim</u> means any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

2.21 - <u>Pro Rata</u> shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

2.22 - <u>Professional Fees</u> means the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a Professional Person.

2.23 - <u>Rules</u> shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

2.24 - <u>Tax Claim</u> means any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

2.25 - <u>Unclassified Priority Claims</u> shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United

4

States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

2.26 – <u>Unsecured Creditor Account</u> shall mean that segregated account referenced and established pursuant to paragraph 7.1 of this Plan, into which the Debtor will deposit 1% of its monthly gross income for distribution to Class 5 creditors over the thirty six (36) month life of this Plan.   The account will be maintained at a Federally insured banking institution and the account shall be maintained within the insurance limit of the institution.

2.27 - <u>Other Definitions</u>.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein.

## ARTICLE III
### DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(1), 507(a)(2) or 507(a)(8) of the Code.

<u>Class 1</u> – All Allowed Unsecured Claims specified in Section 507(a)(4) or 507(a)(5) of the Code as having priority.

<u>Class 2</u> – The Allowed Secured Claim held by Wells Fargo Bank, N.A.

<u>Class 3</u> – Ford Motor Credit (F750)

<u>Class 4</u> – Ford Motor Credit (F350)

<u>Class 5</u> – The Allowed Unsecured Claims.

<u>Class 6</u> – The Interests held by pre-confirmation shareholders.

## ARTICLE IV
### SPECIFICATION AND TREATMENT OF
### UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Code, the Claims against the Debtor covered in this Article IV are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

5

4.1 - The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims.  Such Claims shall be paid in full on the Effective Date of the Plan, or treated as otherwise agreed to by the particular holders of such Claims.  Allowed Claims of the type specified in Section 507(a)(2) shall be paid prior to Class 5 allowed unsecured claims, and may be paid from the Unsecured Creditor Account.  Section 507(a)(2) Administrative Claims that are allowed by the Court after the Effective Date of the Plan shall be paid upon allowance.

4.2 - The Allowed Claims of a type specified in Section 507(a)(8) of the Code, Tax Claims of governmental taxing authorities, shall be paid on the Effective Date of the Plan or within sixty months of the petition date based on an amortization of the claim over the balance of the sixty month term commencing on the effective date of the Plan with interest at the appropriate rate set by applicable statute.

4.3 - The Debtor shall make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed.  All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

## ARTICLE V
### SPECIFICATION AND TREATMENT OF CLASS 1 CLAIM

5.1 - The Allowed Priority Claims shall receive cash payments of a value, as of the Effective Date of the Plan, equal to the allowed amount of such claims, unless such claimants agree to different treatment all in accordance with Code §1129(a)(9)(B).   The Class 1 Claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and  507(a)(5)  of the Code.

## ARTICLE VI

## SPECIFICATION AND TREATMENT OF SECURED CREDITOR CLAIMS

6.1 – **Wells Fargo Bank**.  Class 2 consists of the Allowed Secured Claim of Wells Fargo Bank. Class 2 is impaired by the Plan.  The Class 2 Secured Claim will be treated as follows:

a.   The Class 2 claim will be paid in accordance with the Stipulation between the Debtor and the Class 2 claimant approved during the course of the Chapter 11 case.  The Stipulation is attached to this Plan as Exhibit C.

6.2 – **Ford Motor Credit Company, LLC (F750)**.  Class 3 consists of the Allowed Secured Claim of Ford Motor Credit Company, LLC secured by the 2008 Ford F-750. Class 3 is impaired by the Plan.  The Class 3 Secured Claim will be treated and paid as follows:

a.   The Class 3 claim shall be fixed in an amount that is equal to the amount outstanding on the underlying note as of the Petition Date.

b.   The Class 3 claim will bear interest at the rate of: (i) 5.9% per annum commencing on the Effective Date of the Plan; or (ii) if Class 3 objects to such rate in their objection to confirmation of the Plan, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. §1129(b) of the Code; or (iii) such other rate as agreed by Debtor and the Class 5 claimant.

c.   The monthly payment of the Class 3 claim shall be calculated based upon a three (3) year amortization of the Claim and paid in equal monthly installments or as may be agreed to by the parties or set by the Court.  The first monthly payment shall be due on the last day of the first full month following the Effective Date.

d.   The Class 3 claimant will retain all liens that secured its Claim as of the Petition Date. The Debtor shall have the option to accelerate payments without penalty.

6.3 – **Ford Motor Credit Company, LLC (F350).**   Class 4 consists of the Allowed Secured Claim of Ford Motor Credit Company, LLC secured by the 2007 Ford F-350.  Class 4 is impaired by the Plan.  The Class 4 Secured Claim will be paid in full within 30 days of the Effective Date of the Plan.

The amount to be paid will be based on the amount due at the Petition Date, less any payments made during the Chapter 11 case or if Class 4 objects to such amount in their objection to confirmation of the Plan, such amount will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. §1129(b) of the Code, or such other amount as agreed by Debtor and the Class 4 claimant.  The Class 4 claimant will retain all liens that secured its Claim as of the Petition Date.

## ARTICLE VII
### SPECIFICATION AND TREATMENT OF UNSECURED CLAIMS

7.1 – Class 5 consists of those unsecured creditors of the Debtor that hold Allowed Claims that were either scheduled by the Debtor as undisputed, or subject to timely filed proofs of claim to which the Debtor does not successfully object.  Class 5 shall receive payment of their Allowed Claims as follows:  Class 5 shall receive a pro-rata distribution equal to 1% of the Debtor's Gross Revenue generated over the three year period commencing on the Effective Date of the Plan less the amount necessary to pay any Unclassified Priority Claimant who agrees to accept deferred payment of its claim ("Class 5 Distribution").  Commencing on the first full month following the Confirmation Date, the Debtor shall at the conclusion of each month, set aside in a segregated account, an amount equal to 1% of the preceding month's Gross Revenue ("Monthly Distribution Amount").  Each time three Monthly Distribution Amounts have been set aside, the Debtor shall make any payment due to Unclassified Priority Claimants and then the Class 5 Distribution will be made to Class 5 creditors on a pro-rata basis.  In addition, Class 5 shall receive a pro-rata distribution of the proceeds of any Avoidance Action brought by the Debtor, less reasonable costs and attorneys fees incurred by the Debtor to pursue the claim through litigation, settlement, and/or collection.  No interest will be paid on account of Class 5 claims.

a. At any time after three Monthly Distribution Amounts have been set aside, the Debtor may buy out or prepay the Class 5 claims by taking an average of the three prior Monthly Distribution Amounts and multiplying the average Monthly Distribution Amount by the number of months remaining under the Plan for payment to Class 5. Once the pre-payment is made, no further payments shall be due to Class 5.

b. The claims held by insiders of the Debtor have agreed to forgo the receipt of any distribution under the Plan provided Class 5 otherwise accepts the Plan. In the event that Class 5 rejects the Plan, Class 5 will have another option under which they may elect to exchange their claims for newly issued shares of stock in the Debtor pursuant to paragraph 9.13.

## ARTICLE VIII
## SPECIFICATION AND TREATMENT OF INTERESTS

8.1 - Class 6 includes the Interests in the Debtor held by the pre-confirmation shareholders. Class 6 is unimpaired by this Plan. On the Effective Date of the Plan all stock interests in the Debtor held by Class 6 shall be retained by Interest holders.

8.2 - In the event Class 5 votes to reject the Plan, this paragraph shall govern the treatment of Class 6. In such event, all outstanding member interests shall be cancelled on the Effective Date of the Plan. Class 6 shall neither receive nor retain an interest in the Debtor under the Plan.

## ARTICLE IX
## MEANS FOR THE PLAN'S EXECUTION

9.1 - **Operation of Business**. The Debtor shall be empowered to take such action as may be necessary to perform its obligations under this Plan. The actions include, but are not limited to, operation of its existing business.

9.2 **Unsecured Creditor Account.** On the Effective Date of the Plan, the Debtor shall open a separate interest bearing deposit account at a Federally-insured commercial bank selected by the Debtor. The bank account will be maintained by the Debtor as the Unsecured Creditor Account into which all payments made by the Debtor

9

for the benefit of the Class 5 creditors will be made until the term of the Plan is completed.

9.3 – **Management Fees and Costs.**  The Debtor shall be entitled to compensate its officers with reasonable fees for their services following confirmation of the Plan. Funding for such fees will be derived from the operation of the Debtor's business.

9.4- **Effectuating the Plan**.  On the Effective Date of the Plan, Peter Young, shall be appointed as the agent of the Debtor pursuant to 11 U.S.C.§1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan, including but not limited to execution of documents.

9.5 – **Disputed Claim Procedure**. Distributions to any class of creditor will only be made on account of Allowed Claims.  In the event that distributions are made at a time that a claim objection is pending before the Court or a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, the portion of the distribution that would be paid to the disputed claimant will be held in an interest bearing bank account until the Claim is Allowed or disallowed.  If Allowed, the Claim will be paid its appropriate share of the withheld payment.  If disallowed, the withheld distribution will be paid on a Pro Rata basis to the remaining impaired Allowed claimants, or if all holders of Allowed Claims have been paid in full, paid to Debtor.

9.6 - **Claims and Litigation Bar Date and Standing**.  All Claim objections and Avoidance Actions in the case must be filed no later than 60 days following the Effective Date.  The Debtor shall have standing to commence, prosecute, and settle claim objections, Litigation, and avoidance actions without need for Court approval.

9.7 - **Administrative Expense Bar Date**.  All applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within 45 days following the Confirmation Date.

9.8 - **Monthly Installments.**  Whenever the Plan provides for payment in monthly installments or a payment due in a certain month, the payment shall be due on the last day of the calendar month in which the payment is due, unless otherwise specified in the Plan.  The Debtor shall then have a five day grace period within which

the monthly payment must be received by the payee before the Debtor shall be in default.

9.9 - **Final Decree.**  The Debtor will request entry of a final decree closing the case on or before the later of the date all Claim objections and any pending litigation is concluded or 180 days after the Effective Date of the Plan.

9.10 - **Quarterly Fees.**  Prior to the entry of the final decree, the Debtor shall continue to remit quarterly fees and post-confirmation reports to the United States Trustee, as required by statute.

9.11 - **Exemption from Transfer Taxes.**  Pursuant to Section 1146(c) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan or the Agreements shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

9.12 – **Contractual Relationship.**  The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and its creditors.  In the event of a default by the Debtor under the Plan, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan.  Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of its rights and remedies including foreclosure of its deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document.  Any creditor claiming a breach by the Debtor must provide written notice to the Debtor of the claimed default, the notice must provide the Debtor a ten (10) day period within which to cure the claimed default. Upon the Debtor's failure to cure the default within such ten day period, the creditor may proceed to exercise their rights and remedies.

9.13 – **Issuance of New Shares.**  In the event Class 5 votes to reject the Plan, on the Effective Date of the Plan, new shares of the Debtor's common stock ("New Shares") shall be issued on a pro-rata basis to Class 5 creditors that elect to accept stock in the Debtor in exchange for such claimant's Allowed Claim.  Shares shall be allocated to those electing parties, on a pro-rata basis, based upon the amount of their Class 5

Allowed Claim.   Election to accept shares must be made in writing by request to the Debtor or Debtor's counsel prior to the confirmation hearing.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1   - On the Effective Date of the Plan, the Debtor does hereby assume those executory contracts and unexpired leases listed in Exhibit A attached hereto and incorporated herein by reference, which have not been assumed by prior Order of the Court prior to the Confirmation Date.   On the date of the entry of an Order confirming the Plan, the Debtor shall be the holder of all right, title and interest to the assumed leases and contracts and such assumed leases and contracts shall be in full effect and binding upon the Debtor and the other parties thereto.   Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption and assignment set forth in 11 U.S.C. §365(b) and (f).

10.2 - On the Effective Date of the Plan, the Debtor will reject all executory contracts and unexpired leases to which it is a party which are listed in Exhibit B, attached hereto and incorporated herein by reference which have not been rejected by prior Order of the Bankruptcy Court prior to the Confirmation Date.   Executory contracts and unexpired leases will be rejected pursuant to the provisions of 11 U.S.C. §365.   Any executory contract or unexpired lease not assumed in accordance with the Plan shall be rejected.

10.3 - An Order confirming this Plan constitutes approval by the Court of the assumption or rejection of the executory contracts and unexpired leases described herein in accordance with the provisions of 11 U.S.C. §365 and the Rules.

10.4 - **Claims Arising from Rejection.** The Debtor is rejecting all executory contracts and unexpired leases previously rejected by Court Order, subject to a pending motion to reject, or not specifically assumed in accordance with the Plan.   Proofs of Claim with respect to Claims arising from the rejection of any other executory contract or unexpired lease shall be filed with the Court within twenty (20) days after the later of (i) the date of the Court order approving the Debtor's rejection of such executory contract or unexpired lease or (ii) the Confirmation Date.

12

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1   **Revestment.**  The entry of an Order confirming this Plan shall revest in the Debtor all property of the estate free and clear of all liens except those specifically set forth in the Plan or as otherwise provided in the Plan.

11.2   **Retention of Jurisdiction**.  Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

1.   Determination of the allowability of claims upon objection to such claims by the debtor-in-possession or by any other party in interest;

2.   Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(2), including compensation of the parties entitled thereto;

3.   Resolution of any disputes regarding interpretation of the Plan;

4.   Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

5.   Modification of the Plan pursuant to 11 U.S.C. Section 1127;

6.   Adjudication of any causes of action, including avoiding powers actions, brought by the debtor-in-possession, by the representative of the estate or by a trustee appointed pursuant to the Code;

7.   Adjudication of any cause of action brought by the debtor-in-possession, creditors committee, by a representative of the estate, or by a trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. Section 542-549.  This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code; and

8.   Entry of a final decree.

11.3 - **Satisfaction of Claims.** The Debtor shall receive a discharge on the confirmation date pursuant to Section 1141(d). Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is

13

provided under the Plan as set forth in the Plan.  Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date.  This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.4  **Headings**.  The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan

11.5  **Notices.**    All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.  All communications will be deemed delivered when received at the following addresses:

      a.      To:
Peak 'N Prairie Landscape & Reclamation, Inc.
Attention: Peter Young
11965 Tower Road
Commerce City, Colorado 80037.

With a copy to:
Lee M. Kutner
Kutner Miller Brinen, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Tel:  303-832-2418
Fax: 303-832-1510
Email:lmk@kutnerlaw.com

      b.      To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, other, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

11.6 - **Successors and Assigns**.  The Plan will be binding upon the Debtor, any creditor affected by the Plan and their heirs, successors, assigns and legal representatives.

11.7 - **Unclaimed Payments**.  If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in

14

paragraph 11.5, within one (1) year of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.8 - **Committee Termination**.   Any Creditors Committee appointed in the bankruptcy case shall terminate on the date the Court enters a Final Decree pursuant to Section 350(a) of the Bankruptcy Code, or at such earlier date as the Creditors Committee deems appropriate.

11.9 - **Liability**.  Except as set forth in this Plan, neither the Debtor, any Committee appointed nor any of their agents, managers, representatives, attorneys, accountants or advisors shall have or incur any liability for any past, present or future actions taken or omitted to be taken under, in connection with, related to, affecting or arising out of the bankruptcy case or this Plan except for claims based on gross negligence or willful misconduct.

# ARTICLE XII
## CONFIRMATION REQUEST

12.1 - The Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. §1129.  The Debtor will solicit acceptance of the Plan after its Disclosure Statement has been approved by the Court and is transmitted to the creditors, interest holders and parties in interest.   In the event the Debtor does not obtain the necessary acceptances of its Plan, it may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. §1129(b).  The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired and has not voted to accept the Plan.

DATED: October___, 2012    PEAK 'N PRAIRIE LANDSCAPE &
RECLAMATION, INC.

By: _____
      Peter Young, President

Lee M. Kutner
Kutner Miller Brinen, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Telephone: 303- 832-2400
Fax: 303-832-1510
Email: lmk@kutnerlaw.com

ATTORNEYS FOR PEAK 'N PRAIRIE LANDSCAPE & RECLAMATION, INC.
DEBTOR AND DEBTOR-IN-POSSESSION

16

**EXHIBIT A**

**Executory Contracts and Unexpired Leases Assumed**

     1.      All contracts and leases previously assumed or for which a motion to assume is pending.

     2.      All leases and contracts that are not specifically rejected.

## EXHIBIT B

### Executory Contracts and Unexpired Leases Rejected

A.      All leases and contracts previously rejected by Court Order.

**Exhibit C**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

**The Honorable Michael E. Romero**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **PEAK N' PRAIRIE LANDSCAPE &** | ) | **Case No. 12-10321** |
| **RECLAMATION, INC.** | ) | **Chapter 11 Bankruptcy** |
| Debtor. | ) | |
| | ) | |

---

**STIPULATION TO AMEND CASH COLLATERAL AGREEMENT AND FOR
ADEQUATE PROTECTION**

---

COME NOW the Debtor, **PEAK N' PRAIRIE LANDSCAPE &
RECLAMATION, INC.**, and the Creditor, **WELLS FARGO BANK, NATIONAL
ASSOCIATION** ("Wells Fargo") by and through their undersigned attorneys, and enter
into this Stipulation to Amend Cash Collateral Agreement and for Adequate Protection as
follows:

   A.     The Debtor filed for relief under Chapter 11 of Title 11 of the Bankruptcy
Code on January 9, 2012 (the "Petition Date") and remains a Debtor-in-Possession.

   B.     The Debtor continues in possession of its property and is operating and
managing its businesses as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

   C.     On or about May 7, 2007, the Debtor entered into a Loan Agreement with
Wells Fargo. The loan was originally in the amount of $175,000.00, and the current
outstanding principal balance is $170,083.58 (the "Loan"). The Debtor granted Wells
Fargo a lien on certain personal property pursuant to a Commercial Security Agreement
which encumbers certain inventory, equipment, accounts, and general intangibles. The
lien is perfected by a UCC-1 financing statement.

   D.     The Debtor generates income on a monthly basis from landscaping
services provided to residential and commercial customers. All of the Debtor's cash and
receivables now in existence or generated after the petition date constitute cash collateral
in which Wells Fargo holds an interest within the meaning of 11 U.S.C. § 363(a) (the
"Cash Collateral").

   E.     The Debtor requires the use of the Cash Collateral to operate in the
ordinary course of business.

F.      Wells Fargo and the Debtor previously agreed to the Debtor's use of the Cash Collateral as set forth in the Cash Collateral Agreement signed on February 13, 2012, and approved by the Court by Order dated March 16, 2012 (Docket No. 57). Debtor has been making monthly adequate protection payments in the amount of $1,098.46 as set forth in the Cash Collateral Agreement.  Wells Fargo and the Debtor have since had further discussions regarding continued use of the Cash Collateral and proposed Plan treatment for Wells Fargo, and have agreed to modify the terms set forth in the Cash Collateral Agreement.

G.      Accordingly, the parties hereby stipulate and agree as follows:

1.      <u>Acknowledgement</u>.  Debtor acknowledges and agrees that as of July 3, 2012, it is indebted to Wells Fargo on the Loan in the outstanding principal amount of $170,083.58, plus accrued interest in the amount of $28,559.87, plus attorney fees and costs incurred by Wells Fargo in its efforts to enforce the terms of the Loan in the amount of $30,000.00, for a current total of $228,643.45 (the "Outstanding Obligation").

2.      <u>Interest Rate</u>.  The Loan has been accruing interest at the non-default rate of 7.75% per annum.  From August 1, 2012, the interest rate for the remaining term of the Loan shall be fixed at 6.00% per annum.  In the event of a future default by Debtor under the Loan, the Loan will be subject to a default rate of 10.00% per annum.  In addition, in the event of default, Wells Fargo shall be entitled to reasonable attorney fees and costs incurred the enforcement of this Stipulation.

3.      <u>Payments</u>.      The term of the Loan will be modified to mean that the Loan will mature on August 1, 2015.  In consideration of Wells Fargo's consent to the Debtor's continued use of Cash Collateral in the ordinary course of the Debtor's business, the Debtor agrees to make increased adequate protection payments to Wells Fargo in the amount of $3,840.33 per month, ("Increased Adequate Protection Payments"), with the first such payment to be made on August 15, 2012, and subsequent payments to be made by the 15th of each month thereafter with all unpaid principal, interest attorney fees and other collection costs due on or before August 15, 2015.  Payments shall be made payable to Wells Fargo Bank, N.A., and delivered to David C. Walker, Esq. at Brown, Berardini & Dunning, P.C., 2000 S. Colorado Blvd., Tower 2, Suite 700, Denver, CO 80222.

4.      <u>Chapter 11 Plan</u>.      Debtor's Chapter 11 Plan shall incorporate the foregoing terms as its treatment for Wells Fargo's claim.  Within ten (10) days of confirmation of Debtor's Chapter 11 Plan, Debtor agrees to execute any and all documents deemed reasonably necessary by Wells Fargo to evidence the modification of the Loan as set forth herein.

5.      <u>Notice of Default</u>.      In addition to Wells Fargo's remedies under the loan documents evidencing or securing the Loan, as modified, in the event that Debtor fails to make any payment when due, Wells Fargo will send written notice to Debtor and Debtor's counsel by email and by first class U.S. mail, and such written notice shall provide Debtor with a ten (10) day right to cure such default.

6.    <u>Authorization to Use Cash Collateral</u>.       Wells Fargo consents to the Debtor's continued use of Cash Collateral in the ordinary course of the Debtor's business. The Debtor is authorized, pursuant to § 363 of the United States Bankruptcy Code and the terms and conditions of this Agreement, to receive, collect and use Cash Collateral under § 363 of the United States Bankruptcy Code.

7.    <u>Use of Cash Collateral</u>.     Subject to the terms and conditions of this Agreement, the Debtor shall use Cash Collateral only for the reasonable and necessary expenses incurred in the operation of the Debtor's business as specifically set forth in Exhibit "A" attached hereto, and shall not deviate more than 15% from any line item expense without the prior agreement of Wells Fargo. The Debtor may use Cash Collateral in order to pay expenses incurred by the Debtor post-petition, including administrative expenses in the bankruptcy case.

8.    <u>Financial Reporting</u>.  The Debtor shall provide to Wells Fargo a complete accounting, on a monthly basis, of all expenditures, collections, and generation of new receivables, as well as copies of all financial reports filed with the Office of the United States Trustee.

9.    <u>Acknowledgment of Security</u>.     The security interest and lien held by Wells Fargo in the Cash Collateral and granted herein are hereby deemed valid, enforceable and perfected without any further action by Wells Fargo.

10.    <u>Grant of Post-Petition Security Interest</u>.  The Debtor hereby grants to Wells Fargo a lien and security interest in all inventory, equipment, accounts, and general intangibles generated by the Debtor post-petition. The lien granted herein is provided to the extent that the bankruptcy stay or the Debtor's use of the Cash Collateral results in a decrease in the value of Wells Fargo's interest in such property.

11.    <u>Binding Effect</u>.    All terms and provisions of this Agreement, including but not limited to, the security interest and liens granted herein, and the priority established hereby, shall be binding on the Debtor and any subsequently appointed Trustee under either Chapter 7 or 11 of the Bankruptcy Code.

12.    <u>Delivery of Pleadings</u>.       The Debtor agrees to deliver to Wells Fargo or its counsel, in addition to items required by Bankruptcy Rule 2002 and Orders of the Bankruptcy Court, copies of all operating reports, Statement of Financial Affairs and Schedules and all other pleadings filed with the Bankruptcy Court by the Debtor.

13.    <u>Prohibition of §364(d) Liens</u>. The Debtor shall not create, permit, assume or suffer to exist any lien or security interest in favor of any person or entity other than Wells Fargo against the Cash Collateral which takes priority or equal position to the liens held by Wells Fargo pursuant to § 364(d) of the Bankruptcy Code, except liens and security interests expressly consented to in advance, in writing, by Wells Fargo or unless otherwise authorized by the Bankruptcy Court.

14.    Inspection.    The Debtor agrees that Wells Fargo or any of its representatives shall be permitted to inspect, examine and copy any books and records and operations of the Debtor relating to its ongoing business.  Such inspections and document productions may take place at the Debtor's premises or such other place as the books and records may be located or business conducted upon reasonable written notice provided by Wells Fargo to the Debtor.

15.    Default.

a.    Default under this Agreement shall include the following: (each, a "Default"):

i.    Failure to timely pay any of the Adequate Protection Payments;

ii.    Failure to deposit all cash receipts in the Debtor-in-Possession account, or as otherwise ordered by the Bankruptcy Court;

iii.    Failure to comply with any other term or condition of this Agreement, including, but not limited to, the reporting of information provided under this Agreement;

iv.    The conversion of the bankruptcy case to a case under Chapter 7;

v.    The appointment of a Trustee in the bankruptcy case; and

vi.    The failure of the Debtor to maintain insurance on the Wells Fargo collateral, as required by the underlying loan documents.

b.    Remedies.    If the Debtor fails to timely make an Adequate Protection Payment, or if any other Default occurs, then the Debtor shall have three (3) business days after written notice thereof to the Debtor by Wells Fargo, such default shall constitute an "Event of Default".  Upon the occurrence of an Event of Default, Wells Fargo's consent to the use of Cash Collateral shall automatically be deemed withdrawn and terminated without further Court Order.

16.    Survival.    Notwithstanding the expiration of the Debtor's right to use Cash Collateral hereunder, or any Default by the Debtor causing its earlier termination of the use of Cash Collateral, the rights, security interests, liens, priorities, and adequate protection provided to Wells Fargo pursuant to the terms of this Agreement shall, in any and all events, survive and continue in full force and effect.

17.    Notices.    Any and all notices, pleadings or filings required to be provided under this Agreement shall be provided in writing by U.S. First Class Mail, electronic mail or overnight delivery service, as follows:

If to the Debtor:

Peak 'N Prairie Landscape & Reclamation, Inc.
P.O. Box 37
Commerce City, CO 80037

With a copy to:

Lee M. Kutner, Esq.
303 E. 17th Avenue, Suite 500
Denver, CO 80203
LMK@kutnerlaw.com

If to the U.S. Trustee:

Jarrod Martin, Esq.
999-18th Street, Suite 1551
Denver, CO 80202
Jarrod.Martin@usdoj.gov

If to Wells Fargo:

Wells Fargo Bank, National Association
Attn: Ms. Tracy Harding
Credit Management Group
1740 Broadway
MAC: C7300-079
Denver, CO 80274
Tracy.harding@wellsfargo.com

With a copy to:

David C. Walker, Esq.
Brown, Berardini & Dunning, P.C.
2000 South Colorado Blvd.
Tower Two, Suite 700
Denver, CO 80222
dwalker@bbdfirm.com

18.   No Waiver.   The Debtor agrees that this Agreement is not intended nor shall it be construed to be a waiver or limitation in any way by Wells Fargo of any rights or remedies under the Bankruptcy Code or other applicable law which it has or may have, including, but not limited to, the right of Wells Fargo to request relief from the automatic stay under § 362 of the Bankruptcy Code.

19.   Insurance.   The Debtor shall maintain and keep in full force and effect all insurance required under the underlying loan documents.

20.   Amendment.   This Agreement shall not be amended, modified or supplemented except by written agreement executed by the parties hereto.

21.   Counterpart.   This Agreement may be executed by each party in identical counterparts, each of which shall be deemed to be an original and all of which, taken together, shall constitute one Agreement, binding upon all parties.

DATED this *13th August ZK* day of ~~July~~ 2012.

> KUTNER MILLER BRINEN, P.C.
>
> Lee M. Kutner, Reg. No. 10966
> 303 E. 17th Avenue, Suite 500
> Denver, CO 80203
> Telephone: 303-832-2400
> LMK@kutnerlaw.com

DATED this *14TH August* day of ~~July~~ 2012.

> BROWN, BERARDINI & DUNNING, P.C.
>
> David C. Walker, Reg. No. 36551
> Attorneys for Wells Fargo Bank, National
> Association
> 2000 South Colorado Boulevard
> Tower Two, Suite 700
> Denver, Colorado 80222
> Telephone: 303-329-3363
> dwalker@bbdfirm.com